THE KANSAS LIFE INSURANCE COMPANY V. THE FIRST BANK OF TRUSCOTT.

No. 6260.   Decided January 30, 1935.
(78 S. W., 2d Series, 584.)

*James A. Stephens,* of Benjamin, and *Joiner & Cook,* of Plainview, *Charles M. Howell* and *Katherine W. Halterman,* both of Kansas City, Mo., for plaintiff in error.

Since the application and policy constitute the contract, the party procuring the contract, by fraudulent acting with other parties, and in their interests, and against the interest of the insurance company, renders the contract a nullity, unless ratified after knowledge of the facts. Aetna Ins. Co. v. Richey, 206 S. W. 383; Judd v. Lubbock Mutual Aid Assn., 269 S. W., 284; Cotton v. Rand, 93 Texas, 7, 53 S. W., 343.

No contractual relation existed between the parties, by reason of the concealed fraud on the part of the insured, the medical examiner, the beneficiary and the agent procuring the writing of the policy; the holding of the court that the incontestability clause, written in the policy as a part of the contract, is binding on the insurance company, is permitting the conspirators to take advantage of, and profit by their own fraud, and such holding is erroneous and against public policy. Hanover Fire Ins. Co. v. Ray, 26 S. W. (2d) 295; Thos W. Blake Lbr. Co. v. Guaranty State Bank, 290 S. W., 195.

*D. J. Brookerson,* of Benjamin, for defendant in error.

The insurance company not having claimed or asserted any fraud in the manner of the issuance of the policy until it filed its answer May 20, 1931, more than one year after the date of the issuance and delivery of said policy, the trial court properly struck out that portion of insurance company's answer in which it attempted to assert a defense against said policy based on the way and manner same was procured and issued. Said policy contained an incontestable clause limiting the period of time at one year in which said policy could be contested.

R. S., 1925, Art. 4732, sec. 3; American Natl Ins. Co. v. Welsh, 22 S. W. (2d) 1063; National Life & Acci. Ins. Co. v. Taree, 8 S. W. (2d) 291; Southern Union Life Ins. Co. v. White, 188 S. W., 266.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals affirmed a judgment of district court in favor of defendant in error against plaintiff in error for $2,500, the face amount of a policy of insurance issued by plaintiff·in error on the life of one Burgess, and for the additional sums of $300 as penalty and $200 as attorney's fee. 47 S. W. (2d) 675.

The policy had been assigned to defendant in error as security for Burgess' indebtedness to it in a sum exceeding the amount of the policy. Pursuant to the requirement of subdivision 3 of Article 4732, Revised Civil Statutes of 1925, the policy contained an incontestable clause in the following language:

"This policy shall be incontestable after one year from date of issue, except for the non-payment of premiums or violation of its terms as to military or naval service in time of war, and except as to provisions and conditions relating to disability benefits and those granting additional insurance specifically against death by accident, if any."

The date of the policy was July 16, 1929. The insured died July 28, 1930.

The sole question presented here is whether the Court of Civil Appeals correctly held that the incontestable clause precluded the defense specially pleaded in the answer. The substance of the allegations contained in the answer is as follows: Burgess, the insured, who was indebted to defendant in error in a large amount and was in straitened circumstances financially, had long been in ill health, which caused him to have high blood pressure and made him an undesirable risk for life insurance, all within the knowledge of defendant in error and its vice president, Mrs. Evelyn Clark. Mrs. Clark, upon her own application, was appointed an agent of plaintiff in error to that applications for life insurance, and a short time thereafter defendant in error, acting through Mrs. Clark, and in order to protect itself against loss, induced Burgess to make application for a policy of life insurance in the sum of $2,500. When the application was made Burgess was in ill health and under care and treatment of his physician in Hale Center, but Mrs. Clark

caused him to go to Plainview and be examined there by another physician, who falsely made a favorable report as to his physical condition. In reliance upon this report plaintiff in error issued the policy of insurance. It would not have issued the policy had it known the truth as to the physical condition of Burgess. The policy was applied for with the intention of assigning it to defendant in error and after its delivery it was so assigned. The disease from which Burgess was then suffering continued and caused his death. The facts as to the condition of the health of Burgess and his indebtedness to the bank were unknown to plaintiff in error. Defandant in error paid the premiums for the policy and had the policy in its possession at all times after its delivery and even before its assignment. By the said acts of defendant in error, Mrs. Clark and the physician in procuring the making of the application for the insurance, in causing the physical examination to be made, and in making and causing to be made the false report as to the physical condition of Burgess, a fraud (it is alleged) was perpetrated upon plaintiff in error and the policy of insurance was made void.

These are allegations of an unconscionable fraud in the procurement of the issuance of the policy, which if proven would, in the absence of the incontestable clause, constitute a complete defense to a suit on the policy.

However strongly we may be tempted, on account of the nature of the facts alleged, to admit them as a defense in this case, we cannot do so without doing violence to the language of the incontestable clause and without conflict with the decisions construing that clause and the statute which requires its presence.

Subdivision 3 of Article 4732 provides than no policy of life insurance shall be issued unless it contains a provision substantially as follows:

"That the policy, or policy and application, shall constitute the entire contract between the parties and shall be incontestable not later than two years from its date, except for nonpayment of premiums; and which provision may or may not, at the option of the company, contain an exception for violations of the conditions of the policy relating to naval and military services in time of war."

The policy in substantially the language of the statute fixes the expiration of one year from its date as the time after which it may not be contested, except for non-payment of premiums, etc. This language of the statute and of the con-

tract literally and plainly means that after the expiration of the period named there may be no contest of the right to recover on the contract, except for non-payment of premiums or violation of the terms of the policy as to military or naval service in time of war. Fraud, of whatever nature, in procuring or inducing the execution of the contract is not named as a ground on which recovery may be contested. In other words, the statute and policy provide that after the expiration of the period prescribed there may be no contest at all of the validity or the binding effect of the policy, with certain specified exceptions which may serve as reasons or grounds for contest, and fraud if not one of the exceptions.

In an opinion construing subdivision 3 of Article 4732 (then Article 4741) Justice Greenwood said:

"It was the obvious purpose of subdivision 3 to prescribe two years as a maximum period of limitation, *after which no defense should be allowed to defeat payment of the policy, except non-payment of premiums, or violations of conditions relative to naval or military services during war.* The subdivision allows the insuring company to fix a period of time, not to exceed two years, during which it may make fully available to itself all the legal consequences of fraud, which ought to be discovered through the exercise of proper diligence; *but, after the expiration of the period fixed, the subdivision eliminates all defences, save those specially mentioned.*" (Italics ours.) American National Insurance Co. v. Tabor, 111 Texas, 155, 159, 230 S. W., 397. See also American National Insurance Co. v. Welsh (Com. App.), 22 S. W. (2d) 1063; Southern Union Life Insurance Co. v. White, 188 S. W., 266 (application for writ of error refused); American National Insurance Co. v. Briggs, 156 S. W., 909 (application for writ of error refused); Howard v. Missouri State Life Insurance Co., 289 S. W., 114 (application for writ of error refused); Metropolitan Life Insurance Co. v. Peeler, 71 Okla., 238, 176 Pac., 939, 6 A. L. R., 441 and note; Cooley's Briefs on Insurance (2d ed.), Vol. 5, pp. 4483-4486; Couch's Encyclopedia of Insurance Law, Vol. 8, Section 2155, pp. 6953-6962.

The Supreme Court of Tennessee in construing an incontestable clause in similar language to that in the policy in this case said:

"The meaning of the provision is that, if the premiums are paid, the liability shall be absolute under the policy, and that no question shall be made of its original validity. No reasonable construction can be placed upon such provisions, other than

that the company reserves to itself the right to ascertain all the facts and matters material to its risk and the validity of its contract, for one year; and if within that time it does not ascertain all the facts, and does not cancel and rescind the contract, it may not do so afterwards upon any ground then in existence. * * * It is said, however, that fraud appearing in the origin of the contract must, as in any other case, render it null and void from the beginning. It is true that fraud vitiates all agreements and undertakings based upon it, and they may be set aside at the instance of the party defrauded. So, in this case, fraud in obtaining the policy would vitiate at the option and upon the motion of the party defrauded; but, under the provision in question, the party must within the year exercise his right to repudiate and rescind it. The effect of this agreement not to contest is to put the company in the attitude of being unable to set up any fraud or false swearing in obtaining the policy, or any other defense to it, save the one excepted, so far as its original validity is concerned." Clement v. New York Life Insurance Company, 101 Tenn., 22, 46 S. W., 561, 42 L. R. A., 247.

The fraud alleged in the answer of plaintiff in error is urged as a defense to defeat the payment of the policy, and further the allegations go to the original validity of the policy, presenting as grounds of invalidity facts existing at the time the policy was issued. The facts alleged therefore are defensive matters which, by the terms of the incontestable clause as construed in the authorities cited, the insurer has agreed shall not be urged, after the expiration of the period named, to defeat payment of the policy.

Plaintiff in error concedes the validity of the statute and of the incontestable clause contained in the policy and does not question the general rule that the incontestable clause, after the expiration of the prescribed period, eliminates the defense of fraud in connection with the application for the policy. It contends, however, that because Mrs. Clark, in procuring the issuance of the policy, represented both parties to the contract without the knowledge of plaintiff in error and acted against the interest of plaintiff in error, her principal, and in the intrest of the other party, and participated in a fraud upon her principal, no contract binding upon plaintiff in error was ever made.

■ The fault in this contention is that perfidy of an agent in negotiating a contract for his principal does not render the contract absolutely void but makes it voidable at the option of

the principal. An agent, who in making a contract for his principal, acts at the same time for the other party, without his principal's knowledge, is acting in fraud of his principal, even though no injury or intent to deceive is shown, and the principal because of such double dealing may, if he desires to do so, rescind the contract. On account of such bad faith toward the principal the contract is voidable at his option, not wholly void. Pridgen v. Adkins, 25 Texas, 389, 395; Cunningham v. Holcomb, 21 S. W., 125; Olsen v. Pettibone, 168 Minn., 414, 210 N. W., 149, 48 A. L. R., 913; 2 Texas Jur., pp. 594-5; 2 C. J., p. 838.

"A *fortiori* the principal may avoid contracts made by the agent as the result of fraud or collusion between the agent and the third party." 2 C. J., p. 839.

Any fraud in a material matter inducing the execution of a contract vitiates the contract in the sense that it may be avoided at the instance of the defrauded party. It does not make the contract a nullity. Clement v. N. Y. Life Insurance Co., 101 Tenn., 22, 46 S. W., 561, 562, 42 L. R. A., 247. The false representations as to the physical condition of Burgess constitute the gist of the fraud alleged in this case. The only difference between this and the ordinary case is that here the agent of the insurer participated in the fraudulent conduct. Collusion or double dealing on the part of the agent of an insurance company in procuring the issuance of a policy is doubtless a more culpable fraud than is misrepresentation on the part of the insured, or the beneficiary, alone, but it is nevertheless fraud in inducing the making of the contract, affecting, like other fraud, the contract's validity. It is therefore a defensive matter excluded by the incontestable clause.

The judgment of the Court of Civil Appeals and the judgment of the trial court are affirmed.

Opinion adopted by the Supreme Court January 30, 1935.